FILED

September 18 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0411

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 210N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOSHUA MITCHELL SAKSA,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC 2009-33
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Garrett R. Norcott, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant Attorney General, Helena, Montana

          Leo J. Gallagher, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs:  August 8, 2012

Decided:  September 18, 2012

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Appellant Joshua Mitchell Saksa (Saksa) appeals the District Court's order that denied his motion to dismiss based upon his allegation that the State intentionally had destroyed exculpatory evidence. We affirm.

¶3      Lewis and Clark County Sheriff's Deputy Sam Mahlum (Mahlum) obtained a search warrant for Saksa's apartment. Mahlum sought the search warrant to find cash that a dealer-turned-confidential informant allegedly had used to purchase marijuana from Saksa. Mahlum and Deputy Dan O'Malley (O'Malley) recorded two interviews with Saksa on the day that they executed the search warrant.

¶4      Mahlum and O'Malley first interviewed Saksa in an unmarked police car outside Saksa's apartment. This interview focused upon Saksa's review of the search warrant. Mahlum eventually advised Saksa of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Saksa continued to speak to Mahlum after acknowledging receipt of his *Miranda* warning. Mahlum, O'Malley, and Saksa entered Saksa's apartment after the interview so that the officers could execute the search warrant. Saksa led Mahlum straight to the cash.

¶5      Mahlum began recording a second interview after Saksa showed him the cash. Mahlum asked Saksa to sign a receipt for the cash. During this exchange, Saksa stated: "Well, I'm not going to deny it with you guys. No, I have to talk to my lawyer." Mahlum

2

then questioned Saksa on medical marijuana and drug dealing. Neither party made further mention of Saksa's remark about talking to his lawyer.

¶6     The State charged Saksa with two felony counts of drug-related charges. Saksa obtained the CD version of his interview with Mahlum during the discovery process. Saksa's review of the CD led him to conclude that five minutes of the interview in his apartment were missing. Saksa based his claims on his comparison of Mahlum's time entries on the CD version, which indicated the interview had taken 32 minutes, with the actual duration of the CD, which took only 27 minutes. The time discrepancy led Saksa to request an opportunity to examine the original digital file. The State informed Saksa, however, that Mahlum had transferred the original digital file from his digital recorder to his computer. Mahlum then had copied the file to a CD and deleted the digital file from his computer. This practice matched his usual method of preserving recorded evidence.

¶7     Saksa filed a motion to suppress the statements that he had made to Mahlum during the interviews. Saksa claimed that he twice had requested a lawyer -- once when he and Mahlum first had entered the apartment and later as depicted on the recording of the interview. Mahlum could not remember Saksa having requested a lawyer other than as depicted on the recording. O'Malley testified that he had heard no request from Saksa for a lawyer. Saksa also questioned the order of the discussions on the recordings. The District Court found Saksa's testimony not to be credible regarding the order of the discussions.

¶8     James Holmes, a certified computer examiner, testified that it was easy to alter or manipulate audio files. Holmes explained the importance of preserving digital files due to the fact that more information can be obtained from the computer than from the CD. Holmes

3

testified that he could analyze the metadata from the original digital file to determine if there had been any modifications. Holmes could not determine whether the recording had been altered based simply on the CD.

¶9 The District Court noted that a discrepancy existed in the times announced by Mahlum on the recording of the CD version of interviews. Mahlum explained that the discrepancy likely had occurred due to his having used two different clocks to announce the beginning and ending times of the recordings. Mahlum testified that he had not altered the recordings during the copying process. Both Mahlum and O'Malley testified that the recordings depicted accurately what had occurred. The District Court denied the motion based upon Saksa's failure to demonstrate that Mahlum had deleted any portion of the interview. Saksa appeals.

¶10 Saksa argues that Mahlum's alleged destruction of the original digital file prevented him from developing evidence that could corroborate his claim that he had requested an attorney at the start of the second interview. We review a district court's ruling on a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether the court correctly interpreted and applied the law to these findings. *State v. Spaulding*, 2011 MT 204, ¶ 13, 361 Mont. 445, 259 P.3d 793.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our 1996 Internal Operating Rules, as amended in 2006, that provide for memorandum opinions. It is manifest on the face of the briefs and the record before us that nothing indicates that the District Court's findings of fact were clearly erroneous and the District Court correctly applied the law to these findings. *Spaulding*, ¶ 13. The District Court determined that Saksa

4

had presented no credible evidence that "the recordings were in fact altered." Both Mahlum and O'Malley testified that the recordings depicted accurately what had happened during the conversations with Saksa. The District Court specifically found Saksa's testimony not to be credible regarding his claim that the recordings depicted events out of the progression in which they had taken place.

¶12 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ JIM RICE


Justice James C. Nelson concurs.

¶13 On the facts of this case I concur with the Court's Opinion. That said, I suggest however, that a prosecutorial or law enforcement agency that does not have protocols in place to preserve the metadata of digital audio, video and documentary evidence, is courting disaster. While this Court has not addressed the issue *yet*, metadata is discoverable in the federal courts. *See United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451 (S.D.N.Y. 2011). In my view, metadata would, likewise, be discoverable under § 46-15-322, MCA, Montana's criminal discovery rules, especially where such information is arguably exculpatory. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). Some offenses are, by their nature, heavily dependent upon digital evidence. I suggest that the rule

will eventually be that the preservation of digital evidence includes the preservation of the associated metadata. To the extent that they have not already done so, prosecutors and law enforcement would be well-advised to proactively prepare and to beat the imposition of this discovery rule in a criminal case where it actually matters.

¶14    With that caveat, I concur.

/S/ JAMES C. NELSON